AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>Juan Avellaneda<br><br>*Defendant(s)* | Case No. 8:17MJ1028-T-MAP |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __2/24/16 - 3/11/16__ in the county of __Hillsborough and Polk__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 846 and 841(b)(1)(A)(viii) | Conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, a Schedule II controlled substance. |

This criminal complaint is based on these facts:

See attached affidavit of Special Agent Andrew G. Scripture, DEA.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Andrew G. Scripture, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __1/19/17__

_____
*Judge's signature*

City and state: __Tampa, Florida__   Mark A. Pizzo, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT

I, Andrew G. Scripture, being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Drug Enforcement Administration (DEA) assigned to the Tampa District Office, Task Force Group 2, and as such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7), that is, an officer of the United States who is empowered to conduct criminal investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section, 2516.

2. I have been employed by the DEA since July of 2014, and during my employment, I have conducted investigations and received specialized training in techniques dealing with the unlawful distribution of narcotics, possession with intent to distribute controlled substances, use of communication facilities to conduct narcotics transactions, and associated conspiracies.

3. Prior to becoming a Special Agent with the DEA, I was employed as a Captain with the United States Marine Corps for six and one-half years. During this time, I was deployed overseas in support of Operation Iraqi Freedom (OIF) and Operation Enduring Freedom (OEF).

4. I have successfully completed an 18-week training academy at the Drug Enforcement Administration's Office of Training in Quantico, Virginia, which

1

was devoted to instructing the tactics, techniques, and procedures of conducting narcotics investigations. Since being assigned to the Tampa District Office, I have been involved in dozens of drug-related investigations that culminated in the arrest of numerous persons for violations of both state and federal narcotics laws. These investigations have resulted in the arrests of individuals who have smuggled, received, and distributed controlled substances, including MDMA, cocaine, heroin, cannabis, and methamphetamine and the arrest of individuals who have laundered proceeds emanating from those illegal activities. Also, these investigations have resulted in seizures of illegal drugs, proceeds of the distribution of those illegal drugs, and evidence associated with those violations.

5. While acting in an official capacity, I have directed numerous confidential sources to successfully infiltrate various narcotics organizations by way of intelligence gathering, participation in consensual recordings, and monitored purchases of controlled substances. I have executed search warrants for controlled substances, related documents, and have conducted surveillance in connection with numerous narcotics investigations. I am familiar with the operation of illegal drug trafficking organizations in the central Florida area, as well as generally throughout the United States.

6. I have participated in both state and federal Court-ordered interceptions of wire communications involving cellular telephones, and I am familiar with the ways in which narcotics traffickers conduct their business,

including methods of importing and distributing narcotics, money laundering, the use of telephones and digital paging devices to facilitate their illegal acts, and the use of numerical codes and code words to conduct drug transactions.

7. The facts in this Affidavit have come from my personal observations, my training and experience, and information obtained from other agents, task force officers, state and local law enforcement officers, and other witnesses. This Affidavit is submitted for the limited purpose of establishing probable cause for the arrest of **Juan AVELLANEDA**, in regards to conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A)(viii).

## PROBABLE CAUSE

8. In early 2016, a confidential source (**CS-1**) contacted Detective Keith Mease of the Polk County Sheriff's Office Bureau of Special Investigation (BSI) and advised that **Juan AVELLANEDA** could supply **CS-1** with large quantities of methamphetamine. Because **CS-1** indicated that **AVELLANEDA** was a native Spanish speaker, Detective Omar Saenz, who was also a native Spanish speaker, was brought into the investigation in order to serve in an undercover capacity.

9. **CS-1** was established as a Polk County Sheriff's Office confidential source approximately two years ago. Detective Keith Mease has worked with **CS-1** for the past two years. **CS-1** has been a paid CS for the Polk County Sheriff's Office. Detective Mease has investigated four major drug trafficking organizations in the

3

Polk County, Florida area and abroad with the assistance of **CS-1**. **CS-1** has provided information resulting in the seizure of over one-hundred (100) pounds of methamphetamine, in addition to cash seizures, federal indictments, state arrests, and a State of Florida court-ordered wire intercept. While a confidential source, the Polk County Sheriff's Office has paid **CS-1** approximately $12,000. Detective Mease along with other detectives and supervisors have found **CS-1** to be reliable. Information **CS-1** has provided has been corroborated by Detective Mease through other confidential sources and various investigative techniques. **CS-1's** motivation is for financial gain and he/she is not pending any criminal charges.

10. On February 24, 2016, Detective Keith Mease, Detective Jonathan McKinney, and Detective Omar Saenz – all from the Polk County Sheriff's Office – met with **CS-1** at a pre-determined location. **CS-1** and Detective Saenz, acting in an undercover capacity (**UC-1**), were instructed to meet with an unknown methamphetamine supplier in order to discuss the future purchase of a half-kilogram of methamphetamine. **CS-1** and **UC-1** departed the pre-determined location and arrived at the meeting location, **Location 1**. Approximately twelve minutes after **CS-1** and **UC-1** arrived at **Location 1**, **AVELLANEDA** arrived at **Location 1** and met with **CS-1** and **UC-1**. The meeting was conducted in Spanish and translated by **UC-1**. During the meeting, **AVELLANEDA** agreed to sell a kilogram of methamphetamine for $16,000.00. **AVELLANEDA** further agreed to provide the methamphetamine for an initial payment of $8,000 with the expectation that he

4

(AVELLANEDA) would be paid the remaining $8,000 at a later time. AVELLANEDA also stated that he (AVELLANEDA) cooked the methamphetamine himself and described the methamphetamine as being of high quality. After departing the meeting location, agents observed AVELLANEDA stop at a retail store, a bank, and a restaurant before returning to his residence at 5509 Small Oak Avenue, Wimauma, Florida.

11. On March 11, 2016, **CS-1** and **UC-1** established another meeting with AVELLANEDA at a location in the Middle District of Florida, **Location 2**, in order to received one kilogram of methamphetamine from AVELLANEDA. Prior to this meeting taking place, agents observed a silver Chrysler 300 (Vehicle 1) departing 5509 Small Oak Avenue in Wimauma, Florida. Vehicle 1 was constantly observed by agents until it arrived at **Location 2**. At that time, **CS-1** and **UC-1** approached Vehicle 1 and observed AVELLANEDA sitting in the driver's seat next to an unidentified Hispanic male (UM-1) in the front passenger seat. UC-1 entered the backseat of the Vehicle 1, and AVELLANEDA asked UC-1 if he (UC-1) had the money. At that time, UC-1 handed AVELLANEDA $8,000.00 of investigative funds. Then, UM-1 reached under the front passenger seat of Vehicle 1, retrieved one kilogram of methamphetamine contained within a plastic container, and handed the plastic container to UC-1. Approximately one minute after entering Vehicle 1, UC-1 exited the backseat of the Vehicle 1, and AVELLANEDA and UM-1 departed **Location 2**. UC-1 and CS-1 then departed **Location 2** and met with

Detective Mease and Detective McKinney. At this time, **UC-1** relinquished custody of the kilogram of methamphetamine to Detective Mease, who field-tested the methamphetamine, resulting in a presumptive positive for the presence of methamphetamine. On April 20, 2016, a forensic chemist at the DEA Southeast Laboratory determined that the kilogram purchased from **AVELLANEDA** by **UC-1** was approximately 99.1% pure and contained 984.7 grams of pure methamphetamine.

12. Based upon the information contained in this Affidavit, I submit that there is probable cause to believe that **Juan AVELLANEDA** did conspire to possess with intent to distribute 500 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A)(viii).

FURTHER AFFIANT SAYETH NAUGHT.

_____
Andrew G. Scripture, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me
this __19__ day of January, 2017, in Tampa, Florida.

_____
MARK A. PIZZO
United States Magistrate Judge

6